**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

Gregory P. Mango,

Plaintiff,

v.

TGP Communications LLC d/b/a The Gateway Pundit,

Defendant.

Case No:

JURY TRIAL DEMANDED

**COMPLAINT**

Plaintiff Gregory P. Mango ("*Plaintiff*"), by and through his undersigned counsel, for his Complaint against defendant TGP Communications LLC d/b/a The Gateway Pundit ("*Defendant*") states and alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*. and for violation of the Digital Millennium Copyright Act ("*DMCA*"), 17 U.S.C. §1202(b).

2. Plaintiff Gregory P. Mango is a professional news photographer who for many years has photographed news, court, and public-interest events in and around New York City, and whose photographs are regularly published by the *New York Post*, *Page Six*, and other major media outlets.

3. Plaintiff is recognized within the New York news-photography community for his coverage of breaking news, criminal proceedings, and matters of public concern, and his photographs are relied upon by editors and publishers for their professional quality and news value.

4. Plaintiff created a photograph of American jurist Arthur Engoron ("*Photograph 1*") and of a freshly baked pepperoni pizza being pulled on a peel from a coal-fired brick oven ("*Photograph 2*") in which Plaintiff owns the rights and licenses for various uses including online

SLG SANDERS · LAW GROUP ·

and print publications. (Hereinafter referred to collectively as the *"Photographs")*.

5. Upon information and belief, Defendant TGP Communications LLC operates The Gateway Pundit, a high-volume digital news and commentary publisher that produces and distributes editorial content, articles, photographs, and video through the Website and the Accounts.

6. As a key part of its business, Defendant owns and operates a website at www.thegatewaypundit.com (the "*Website*").

7. Defendant owns and operates a social media account on Facebook known as Gateway Pundit ("*Account 1*").

8. Defendant owns and operates a social media account on Instagram known as gatewaypundit ("*Account 2*").

9. Defendant owns and operates a social media account on X known as gatewaypundit ("*Account 3*"). (hereinafter the social media platforms set forth above are collectively referred to as the *"Accounts"*).

SLG SANDERS · LAW GROUP ·

10. Upon information and belief, Defendant's business model monetizes audience attention. Defendant derives revenue from the Website principally through the sale of digital advertising displayed against page views, and additionally through sponsored content, the sale of merchandise, paid newsletter subscriptions and memberships, and reader donations and fundraising appeals. Each of these revenue sources depends upon, and increases with, the volume of traffic to and engagement with the Website.

11. Upon information and belief, the Accounts are not incidental to that business; they are promotional and distribution channels that exist to attract audiences on third-party social-media platforms and direct them to the revenue-generating Website. A substantial portion of the traffic to Defendant's articles originates from links, posts, and shares published through the Accounts. In or about 2021, an analysis of Defendant's own web-traffic data found that social-media platforms

accounted for approximately 42% of external referral traffic to Defendant's article pages.[1]

12. Upon information and belief, photographs are integral to that traffic-generation model. Defendant selects and publishes visually compelling photographs, including in the headlines, thumbnails, and previews that appear on the Website and in posts on the Accounts, because such images attract reader attention, increase click-through and engagement, prolong time on the Website, and thereby increase the advertising impressions and other commercial value Defendant derives from its audience.

13. Upon information and belief, Defendant's unauthorized use of Plaintiff's Photograph therefore had direct commercial value to Defendant: it drew reader attention to Defendant's content, drove and retained traffic on the monetized Website and generated advertising and related revenue for Defendant all without payment of the license fee Plaintiff would otherwise have commanded, and to which Plaintiff was entitled.

SLG SANDERS · LAW GROUP ·

14. Defendant, without authorization, reproduced and publicly displayed the Photographs in connection with its commercial activities and engaged in this misconduct knowingly and in violation of the United States copyright laws.

**PARTIES**

15. Plaintiff is a citizen of the State of New York and maintains a principal place of business in Kings County, New York.

16. Defendant is a Missouri limited liability company with a principal place of business at 12300 Old Tesson Road Suite 400- G, Saint Louis in Saint Louis County, Missouri.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

18. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in Missouri.

---

[1] https://csmapnyu.org/research/academic-research/what-we-learned-about-gateway-pundit-from-its-own-web-traffic-data

19. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendant may be found in this District, regularly conducts business in this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District, including the unauthorized reproduction, display, distribution, and/or exploitation of Plaintiff's copyrighted work.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

20. Plaintiff is a professional news photographer whose work is regularly published by the New York Post and other major media outlets, and who is regularly retained to photograph newsworthy people and events.

21. Plaintiff actively enforces his copyrights and copyright-management information, including as the prevailing plaintiff in *Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir. 2020), in which the removal of Plaintiff's gutter credit from a photograph originally published by the New York Post was held to violate 17 U.S.C. § 1202(b).

22. Plaintiff is widely recognized within the news-photography industry for actively protecting and enforcing his copyrights and copyright-management information and for licensing his work through established commercial news outlets.

23. Plaintiff has devoted substantial time, skill, effort, and expense to developing his photography business and creating a portfolio of original photographs.

24. Plaintiff's photographs are valuable intellectual property assets that are commercially licensed to publishers, media outlets, websites, businesses, and other third parties for authorized use in both digital and print media.

25. Plaintiff is the author and copyright owner of numerous original photographic works protected under the Copyright Act, including the photographs that are the subject of this action.

26. Plaintiff maintains exclusive rights under the Copyright Act, including the rights to



SLG SANDERS LAW GROUP

reproduce, distribute, license, publicly display, and otherwise exploit his copyrighted photographs.

27. Plaintiff derives income from the licensing and authorized use of his copyrighted works and maintains exclusive rights in the works he creates pursuant to the Copyright Act.

28. Plaintiff relies upon licensing revenue derived from the authorized use of his photographs and actively protects his copyrighted works against unauthorized reproduction, distribution, and display. Unauthorized use of Plaintiff's photographs deprives Plaintiff of licensing income, diminishes the value of his copyrighted works, and interferes with the market for authorized licenses.

29. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's photographs while many others are the subject of pending copyright applications.

30. Plaintiff regularly licenses Plaintiff's photographs to media outlets, brands, and commercial entities for a fee.

31. Plaintiff's photographs are original, creative works in which Plaintiff owns protectable copyright interests.

32. On February 21, 2017, Plaintiff first published Photograph 1. A copy of Photograph 1 is attached hereto as Exhibit 1.

33. Plaintiff published Photograph 1 by commercially licensing it to New York Post for the purpose of display and/or public distribution.

34. On March 26, 2017, Photograph 1 was registered by the USCO under Registration No. VA 2-036-434.

35. On June 25, 2023, Plaintiff first published Photograph 2. A copy of Photograph 2 is attached hereto as Exhibit 1.

36. Plaintiff published Photograph 2 by commercially licensing it to New York Post for the purpose of display and/or public distribution.

37. On June 27, 2023, Photograph 2 was registered by the USCO under Registration No. VA 2-355-650.



SLG SANDERS LAW GROUP

38. In creating the Photographs, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the images and made each and every artistic determination necessary for the creation of the works.

39. Plaintiff created the Photographs with the intention of it being used commercially and for the purpose of display and/or public distribution.

**B. <u>Defendant's Infringing Activity</u>**

40. Defendant is the registered owner of the Website and of the Accounts and is responsible for its content.

41. Defendant is the operator of the Website and of the Accounts and is responsible for its content.

42. The Website and the Accounts are part of and used to advance Defendant's commercial enterprise.

43. The Website is monetized in that it contains paid advertisements and, on information and belief, Defendant profits from these activities.

44. The Website is monetized in that it sells newsletter subscriptions and merchandise to the public and, on information and belief, Defendant profits from these activities.

45. Upon information and belief, the Website and the Accounts forms part of Defendant's commercial enterprise and is used to attract potential customers, promote Defendant's services, increase public visibility, generate business opportunities, and enhance Defendant's brand recognition.

46. Upon information and belief, Defendant's business model depends in substantial part upon the publication, promotion, and distribution of visual-media content through the Website and the Accounts in order to attract audience attention, increase engagement, enhance brand visibility, expand audience reach, promote products and services, and generate commercial value.

47. Upon information and belief, Defendant knew or should have known that the Photographs were protected by copyright, including because the Photographs were of professional quality and distributed through commercial channels. Despite this, Defendant used the

SLG SANDERS · LAW GROUP ·

Photographs without seeking permission or obtaining a license.

48. Upon information and belief, the Photographs contained visible copyright management information, authorship information, a gutter credit, and/or a watermark identifying Plaintiff, which Defendant removed, omitted, obscured, altered, and/or failed to reproduce.

49. Upon information and belief, Defendant's personnel have significant experience in copyright matters and are familiar with industry practices requiring that photographs used in commercial content, advertising, marketing materials, publications, and social-media posts be properly licensed.

50. On or about October 2023 to January 2024, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Photograph 1 on the Website as part of an on-line story at URLs:

- https://www.thegatewaypundit.com/2023/10/breaking-leftist-nyc-judge-engoron-threatens-jail-president/ ("*Infringement 1*")
- https://www.thegatewaypundit.com/2023/10/breaking-far-left-ny-judge-engoron-threatens-trump/ ("*Infringement 2*")
- https://www.thegatewaypundit.com/2023/10/far-left-ny-judge-engoron-blasts-trump-lawyers/ ("*Infringement 3*")
- https://www.thegatewaypundit.com/2023/11/breaking-far-left-ny-judge-engoron-gags-trumps/ ("*Infringement 4*")
- https://www.thegatewaypundit.com/2023/11/trump-turns-tables-kangaroo-court-judge-engoron-threatens/ ("*Infringement 5*")
- https://www.thegatewaypundit.com/2023/11/just-gop-rep-elise-stefanik-files-judicial-ethics/ ("*Infringement 6*")
- https://www.thegatewaypundit.com/2024/01/outrageous-leftist-judge-engoron-bars-president-trump-giving/ ("*Infringement 7*")
- https://www.thegatewaypundit.com/2024/01/radical-leftist-judge-engoron-swatted-receives-bomb-threat/ ("*Infringement 8*")
- https://www.thegatewaypundit.com/?s=Judge+Arthur+Engoron ("*Infringement 9-18*")

Copies of screengrabs depicting Infringements 1-18 are attached hereto as Exhibit 2.

51. Photograph 1 was willfully and volitionally reproduced and stored by Defendant at



SLG SANDERS LAW GROUP

URL: https://www.thegatewaypundit.com/wp-content/uploads/judge-arthur-engoron-1200x630.jpg.

52. Plaintiff first observed Infringements 1-18 and Defendant's violation of the DMCA on April 1, 2024.

53. On or about October 2023 to January 2024, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Photograph 1 on the Accounts as part of on-line posts at URLs:

- https://www.facebook.com/gatewaypundit/posts/720606373428632 ("*Infringement 19*")
- https://www.instagram.com/p/Cy1UipDNb8P/ ("*Infringement 20*")
- https://twitter.com/gatewaypundit/status/1715400406371594572 ("*Infringement 21*")
- https://twitter.com/gatewaypundit/status/1717233792211935712 ("*Infringement 22*")
- https://twitter.com/gatewaypundit/status/1717931486521729076 ("*Infringement 23*")
- https://twitter.com/gatewaypundit/status/1719445364565049777 ("*Infringement 24*")
- https://twitter.com/gatewaypundit/status/1720542542494658842 ("*Infringement 25*")
- https://twitter.com/gatewaypundit/status/1721585641996120470 ("*Infringement 26*")
- https://twitter.com/gatewaypundit/status/1745190030652387525 ("*Infringement 27*")
- https://twitter.com/gatewaypundit/status/1745493345592299927 ("*Infringement 28*")

Copies of screengrabs depicting Infringements 19-28 are attached hereto as Exhibit 2.

54. Plaintiff first observed Infringements and Defendant's violation of the DMCA for Infringements 19-28 on June 26, 2024.

55. On or about June 25, 2023, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Photograph 2 on the Website as part of an on-line post at URL: https://www.thegatewaypundit.com/2023/06/nyc-



SLG SANDERS · LAW GROUP ·

crack-down-wood-fired-pizza-joints-effort/ ("*Infringement 29*"). A copy of a screengrab depicting Infringement 29 attached hereto as Exhibit 2.

56. Photograph 2 was willfully and volitionally reproduced and stored by Defendant at URL: https://www.thegatewaypundit.com/wp-content/uploads/062523PIZZA1GPM.webp.

57. Plaintiff first observed Infringement 29 and Defendant's violation of the DMCA on December 2, 2024. (Hereinafter the unauthorized uses set forth above are referred to as the "*Infringements*").

58. The Infringements are exact copies or, in the alternative, substantially similar copies of Plaintiff's Photographs and contain the same protectable elements, including composition, subject matter, timing, perspective, angle, lighting, framing, and overall expressive content.

59. Upon information and belief, the Photographs were copied and displayed by Defendant without license or permission, thereby infringing on Plaintiff's copyrights in and to the Photographs.

60. The Infringements each include a URL ("*Uniform Resource Locator*") that was accessible to the public and remained available for viewing for a non-transitory period of time.

61. Upon information and belief, Defendant takes an active and pervasive role in the creation, selection, acquisition, licensing, editing, publication, posting, promotion, and display of content appearing on the Website and on the Accounts, including Plaintiff's Photographs.

62. Defendant exercised control over the content published on its Website and on its Accounts and was responsible for selecting, uploading, and displaying the Photographs. Defendant used the Photographs in furtherance of its commercial interests and derived financial benefit from increased user engagement, brand promotion, and/or sales.

63. Upon information and belief, Defendant directly contributes to and exercises control over the content published on the Website and on the Accounts by, inter alia, utilizing employees, agents, contractors, administrators, editors, moderators, social media managers, and other representatives acting on its behalf (collectively, the "*Representatives*").



SLG SANDERS · LAW GROUP ·

64. Upon information and belief, Defendant vested its Representatives with actual and/or apparent authority to create, select, upload, publish, edit, modify, remove, monitor, and otherwise manage content appearing on the Website and on the Accounts on Defendant's behalf.

65. Upon information and belief, the Representatives acted within the course and scope of their agency, employment, contractual relationship, and/or other authorized relationship with Defendant when creating, selecting, uploading, publishing, displaying, promoting, and/or distributing the content containing Plaintiff's Photographs.

66. Upon information and belief, Defendant authorized, directed, ratified, approved, and/or knowingly permitted the actions of its Representatives with respect to content appearing on the Website and on the Accounts, including the content containing Plaintiff's Photographs.

67. Upon information and belief, the Representatives actively reviewed, monitored, edited, managed, moderated, and otherwise exercised control over content appearing on the Website and on the Accounts. As a result, Defendant had actual and/or constructive knowledge of the content published thereon, including the Infringements.

68. Upon information and belief, Defendant maintained the right and ability to supervise, control, review, approve, modify, remove, and otherwise regulate content appearing on the Website and on the Accounts and exercised such control through its Representatives acting within the course and scope of their authority.

69. Upon information and belief, the Photographs were intentionally and willfully selected, published, displayed, and distributed by Defendant.

70. Upon information and belief, Defendant is not entitled to the limitations on liability set forth in 17 U.S.C. §512 because the Infringements were selected, uploaded, approved, published, and/or distributed by Defendant and/or its Representatives acting within the scope of their authority.

71. Upon information and belief, the Infringements were not posted at the direction of a "user" within the meaning of 17 U.S.C. §512(c), but instead were affirmatively selected and published by Defendant and/or its Representatives.



SLG SANDERS · LAW GROUP ·

72. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringements was apparent. Defendant cannot claim that it was not aware of the infringing activities, including the specific Infringements which form the basis of this complaint, since such a claim would amount to only willful blindness to the Infringements on the part of Defendant.

73. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

74. Upon information and belief, the Photographs contained visible copyright management information, authorship information, and/or a copyright watermark, which Defendant removed, ignored, obscured, and/or failed to reproduce. Such facts support a finding that Defendant acted knowingly and willfully.

75. Upon information and belief, Defendant exercised editorial, managerial, and operational control over the content appearing on the Website and on the Accounts.

76. Upon information and belief, Defendant has the legal right and ability to control and limit the infringing activities on its Website and on its Accounts and exercised and/or had the right and ability to exercise such right.

77. Upon information and belief, Defendant monitors the content on its Website and on its Accounts.

78. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringements.

79. Upon information and belief, the Infringements increased engagement with the Website and the Accounts and generated additional audience traffic, brand visibility, consumer interest, promotional value, and commercial value for Defendant.

80. Upon information and belief, Defendant distributed the Infringements to a broad audience through the Website and the Accounts and derived commercial value from the resulting user traffic, engagement, advertising impressions, and/or promotional exposure.

81. Upon information and belief, Defendant derived commercial value from the

resulting audience engagement, publicity, promotional exposure, brand visibility, audience growth, increased traffic, and related business-development opportunities associated with the Infringements.

82. Upon information and belief, Defendant at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

83. Defendant's use of the Photographs harmed the actual market for the Photographs.

84. Defendant's use of the Photographs, if widespread, would harm Plaintiff's potential market for the Photographs.

85. Defendant's unauthorized use usurps the market for licensed uses of the Photographs and undermines Plaintiff's ability to license his work to other commercial entities.

86. On or about December 6, 2024, Plaintiff, through counsel, notified Defendant of the infringing activity described herein and demanded that Defendant cease and desist from its unauthorized use of Plaintiff's copyrighted work and compensate Plaintiff for its unauthorized use thereof.

87. Despite receiving notice of Plaintiff's claims and being afforded multiple opportunities to resolve the matter amicably, Defendant failed and/or refused to adequately address Plaintiff's claims, thereby necessitating the commencement of this action.

88. Upon information and belief, Defendant continued to reproduce, display, distribute, and/or otherwise exploit one or more of Plaintiff's copyrighted works after receiving notice of Plaintiff's claims. Such post-notice conduct evidences Defendant's knowledge of Plaintiff's rights and supports a finding that Defendant's infringement was knowing, intentional, and willful.

89. As of the date of this Complaint, the infringing posts on Defendant's Facebook and Instagram Accounts (Infringements 19 and 20) remain publicly accessible, notwithstanding Defendant's receipt of Plaintiff's notice on or about December 6, 2024. Plaintiff has preserved screenshots evidencing that these Infringements remain live. Defendant's continued display of Plaintiff's Photographs long after receipt of actual notice of Plaintiff's claims confirms that Defendant's infringement is knowing, intentional, and willful.

SLG SANDERS LAW GROUP

90. The commencement of this action was therefore necessary to protect Plaintiff's rights under the Copyright Act.

91. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

## FIRST CAUSE OF ACTION
***(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)***

92. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

93. The Photographs are original, creative work in which Plaintiff owns valid copyrights.

94. The Photographs are properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

95. Plaintiff has not granted Defendant a license or the right to use the Photographs in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

96. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

97. Defendant's reproduction of the Photographs and display of the Photographs constitutes willful copyright infringement.

98. Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Photographs in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Photographs without Plaintiff's consent or authority.

99. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at



SLG SANDERS LAW GROUP

Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

100. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

101. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

**SECOND CAUSE OF ACTION**
***(Removal and/or Alteration of Copyright Management Information 17 U.S.C. § 1202(b))***

102. Plaintiff repeats and incorporates, as though fully set forth herein, each and every allegation contained in the preceding paragraphs, as though set forth in full herein.

103. The Photographs, as originally published and distributed by Plaintiff and/or Plaintiff's authorized licensing agents at URLs: https://nypost.com/2017/02/21/judge-blasts-protesters-against-iconic-horse-carriage-industry/ and https://nypost.com/2023/06/25/nyc-rules-crack-down-on-coal-wood-fired-pizzerias-must-cut-carbon-emissions-up-to-75/ contained a gutter credit attributing Plaintiff as the author of the works. Such a credit qualifies as copyright management information ("CMI") under section 1202(c) of the DMCA, 17 U.S.C. §1202(c). Copies of screenshots of the Original Source pages are attached hereto as Exhibit 3.

104. Defendant distributed the Infringements without Plaintiff's CMI, as there was no credit provided to Plaintiff upon Defendant's display of the Photographs.

105. Upon information and belief, Defendant's distribution of the Infringements containing the Photographs was undertaken with actual knowledge that Plaintiff's CMI had been removed, altered, omitted, and/or not reproduced without Plaintiff's authorization.

106. Upon information and belief, Defendant knowingly removed, altered, omitted, and/or failed to reproduce Plaintiff's copyright management information and knew, or had



SLG SANDERS ·LAW GROUP·

reasonable grounds to know, that such conduct would induce, enable, facilitate, and/or conceal the infringement of Plaintiff's copyrighted work alleged herein.

107. Upon information and belief, Defendant removed, altered, stripped, and/or failed to reproduce metadata associated with the Photographs, including metadata identifying Plaintiff as the author and copyright owner.

108. Defendant's conduct violates 17 U.S.C. § 1202(b).

109. Plaintiff has sustained substantial injury and monetary damages as a result of Defendant's wrongful acts as herein alleged, and as a result of being involuntarily associated with Defendant, in an amount to be proven at trial.

110. As a result of Defendant's violations of the DMCA, pursuant to 17 U.S.C. § 1203(c)(2), Plaintiff is entitled to an award of the actual damages suffered as a result of the violation including any profits of the Defendant attributable to the violation or, alternatively, Plaintiff may elect to recover from Defendant statutory damages pursuant to 17 U.S.C. § 1203(c)(3) in a sum of at least $2,500 up to $25,000 for each violation of 17 U.S.C. § 1202(b).

111. As a result of the Defendant's violations of the DMCA, the court in its discretion may allow the recovery of reasonable attorney's fees and full costs pursuant to 17 U.S.C. § 1203(b)(4) and (5) from Defendant.

SLG SANDERS · LAW GROUP ·

**JURY DEMAND**

112. Plaintiff hereby demands a trial of this action by jury.

**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff respectfully requests that the Court enters a judgment finding that Defendant has infringed on Plaintiff's rights to the Photographs in violation of 17 U.S.C. §501 *et seq.* and has violated the DMCA under 17 U.S.C. §1202(b) and therefore award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interest in and to the Photographs by copying, reproducing, distributing, publishing, and publicly displaying it without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. finding that Defendant violated section 1202(b) of the DMCA; 17 U.S.C. § 1202(b);

d. for an award of actual damages or, in the alternative, statutory damages against Defendant in an amount up to $25,000.00 for each violation of the DMCA pursuant to 17 U.S.C. § 1203(c);

e. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

f. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. §1203(b)(4) and (5);

g. for pre-judgment interest as permitted by law; and

h. for any other relief the Court deems just and proper.

DATED: August 24, 2026

**SANDERS LAW GROUP**

By: *___/s/ Craig Sanders__________*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 129973

*Attorneys for Plaintiff*